**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| GWENDOLYN BECKWITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 14-1110-JWL |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.    Background**

Plaintiff applied for DIB and SSI, alleging disability beginning October 1, 2008. (R. 23, 218-31).  Plaintiff exhausted proceedings before the Commissioner, and seeks judicial review of the final decision denying benefits.  Plaintiff alleges the Administrative

Law Judge (ALJ) erred in her residual functional capacity (RFC) assessment by failing to properly evaluate the medical opinions of three psychologists regarding the qualitative nature of Plaintiff's ability to interact with supervisors and co-workers.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's decision.

## II.     Evaluation of the Psychologists' Medical Opinions

Plaintiff notes that three psychologists provided opinions regarding Plaintiff's mental impairments--two non-treating sources, Dr. DeGrandis, and Dr. Allen, and one non-examining source, Dr. Hill-Keyes.  She points out that Dr. DeGrandis, who examined Plaintiff, opined that Plaintiff could follow simple instructions but only in a supportive environment, that Dr. Allen who also examined Plaintiff, opined that "she would be prone to problems responding appropriately to supervisors and co-workers if irritated," and that Dr. Hill-Keyes, who reviewed the record, opined that she "could only handle incidental interpersonal interaction."  (Pl. Br. 13) (citing R. 31, 112, 140-41, 445, 489).

Plaintiff argues that the ALJ's evaluation of these medical opinions is inconsistent with the limitations that the ALJ allegedly based upon them.  She acknowledges that the ALJ determined that Plaintiff is able to tolerate only infrequent interactions with supervisors and co-workers, but she argues that this quantitative, temporal limitation (infrequent interactions) does not adequately account for Dr. Allen's qualitative limitation that <u>when Plaintiff is irritable</u> she "would <u>not be able</u> to communicate appropriately with supervisors regardless of how infrequently" she were exposed to them.  (Pl. Br. 13) (emphasis added).  She argues that her understanding is supported by Dr. DeGrandis's

opinion that Plaintiff can follow simple instructions but only in a supportive environment and the vocational expert's testimony that such a limitation would preclude all work, and by her previous employer's opinion that Plaintiff is an "emotional wreck" who had great difficulty accepting instructions and reasonable criticism, and is a nice person who "just has issues."  (Pl. Br. 15) (quoting R. 250, 252).

The Commissioner responds that the ALJ correctly evaluated the psychologists' medical opinions, and that substantial record evidence supports that evaluation.  She argues that in light of all the record evidence, including Dr. Allen's examination, Dr. DeGrandis's examination and opinion, and Dr. Hill-Keyes's opinion, "the ALJ reasonably construed Dr. Allen's opinion as allowing at least infrequent interaction with supervisors and coworkers."  (Comm'r Br. 12) (citing R.30).  In her Reply Brief, Plaintiff argues that the ALJ in this case "never explained how she accounted for those instances when [Ms.] Beckwith's irritability would get the better of her," and that therefore, this court's decision in Neil v. Colvin, Civ. A. No. 12-2334-JWL, 2013 WL 5727391 (D. Kan. Oct. 22, 2013) requires remand.  (Reply 2).

### A.   Standard for Evaluating Medical Opinions

Opinions from any medical source, even those on issues reserved for the Commissioner, must not be ignored, and will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. §§ 404.1527(c), 416.927(c); Soc. Sec. Rul. (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2014).  Those factors are: (1) the length of the treatment relationship and the

frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995). After considering the factors, the ALJ must give good reasons in his decision for the weight she ultimately assigns each opinion. However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion and the reasons for that weight.'" Oldham v. Astrue 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

### B.     The ALJ's Evaluation

The ALJ considered and evaluated four medical opinions regarding Plaintiff's mental impairments. She summarized a report provided by Dr. DeGrandis based on a consultative examination performed on August 15, 2011 and another report provided by Dr. Allen based on a consultative examination performed on April 18, 2012.

As relevant to Plaintiff's allegation of error, the ALJ noted that Dr. DeGrandis opined that Plaintiff can understand and follow simple instructions in a supportive environment with minimal social interaction, and may have difficulty working well

6

alongside others. (R. 31). She accorded Dr. DeGrandis's opinion only "limited weight," noting that "there is some support for Dr. DeGrandis' [sic] conclusions regarding the claimant's ability to interact with others," and that the ALJ had reflected this part of the opinion in her RFC assessment "which limits the claimant to infrequent interaction with co-workers and supervisors, and to working with things, not people." Id. She discounted the remainder of the opinion because Plaintiff was able to maintain focus during Dr. DeGrandis's examination, because the other record evidence suggests Plaintiff can maintain pace and attendance consistent with the RFC assessed, and because Plaintiff's records before examination by Dr. DeGrandis show that she had received medication from her primary physician to treat her mental condition and had not sought specific mental health treatment. Id. On the other hand, the ALJ accorded "great weight" to Dr. Allen's opinion that Plaintiff is able to understand, remember, and carry out instructions, and that Plaintiff "may have difficulty responding appropriately to supervision and co-workers when she is irritable." (R. 31). The bases for this weight were that the opinions is well-supported by Dr. Allen's observations, and by Plaintiff's performance on the mini mental state exam. Id.

    Dr. Hill-Keyes is a psychologist who reviewed the record at the initial review of Plaintiff's claim on November 8, 2011, after Dr. DeGrandis provided her report, but before Dr. Allen provided her report. The ALJ recognized Dr. Hill-Keyes's opinion that Plaintiff is able only to understand, remember, and carry out one to three step work-like procedures, that Plaintiff has mild limitations in the abilities to maintain adequate

concentration and attention for extended periods, and to maintain regular, punctual attendance within customary tolerances, and that Plaintiff can sustain an ordinary routine without special supervision only if interpersonal contact is limited and incidental to the work performed.  (R. 31-32).  The ALJ discounted this non-examining source opinion, and accorded greater weight to Dr. Allen's non-treating source opinion because Dr. Allen's report shows Plaintiff is not limited to the degree assessed by Dr. Hill-Keyes.  Id. at 32.

Finally, at the reconsideration level of review, a medical doctor, Dr. Reed, reviewed the record as constituted on May 3, 2012, including the reports of both Dr. DeGrandis and Dr. Hill-Keyes.  The ALJ recognized Dr. Reed's opinion that Plaintiff had not provided evidence that her mental impairments were severe and that there was insufficient evidence to establish medically determinable mental impairments before Plaintiff's date last insured.  (R. 32) (citing Exs. A7, A8, R. 119-44).  The ALJ accorded "little weight" to Dr. Reed's opinion because he was a non-examining source, because Plaintiff's mental health treatment before her date last insured established medically determinable mental impairments which were not severe, and because the evidence after Plaintiff's date last insured establishes that her mental impairments "more than minimally affect her ability to perform basic work[-]related  activities."  (R. 32).

### C.     Analysis

Plaintiff does not argue error in the ALJ's evaluation of these four medical opinions or the weight accorded to each.  Rather, she asserts that because the ALJ

accorded "great weight" to Dr. Allen's opinion, there is an ambiguity between the ALJ's determination that Plaintiff is able to tolerate infrequent interactions with supervisors and co-workers, and Dr. Allen's opinion that <u>when Plaintiff is irritable</u> she "would <u>not be able</u> to communicate appropriately with supervisors regardless of how infrequently" she is exposed to them.  (Pl. Br. 13) (emphasis added).  In Plaintiff's view, remand is necessary for the Commissioner to address this alleged ambiguity.  The court finds no ambiguity, and no error in the ALJ's evaluation.

First, and most importantly, Dr. Allen did not opine that <u>when Plaintiff is irritable</u> she is <u>not able</u> to communicate appropriately with supervisors regardless of how infrequently she interacts with them.  Rather, Dr. Allen opined that "[i]t is <u>possible</u> that when irritable [Plaintiff] could have <u>difficulty</u> with being able to respond appropriately to supervision and coworkers."  (R. 489) (emphases added).  The ALJ's summary of Dr. Allen's opinion reflects that opinion precisely.  (R. 31) ("the claimant may have difficulty responding appropriately to supervision and co-workers when she is irritable").  Plaintiff's understanding of the opinion is two orders of magnitude removed from Dr. Allen's actual opinion.  The opinion was stated as a possibility, not as a probability, and certainly not as a certainty.  And, it was stated as a <u>difficulty</u> in ability to respond appropriately, not as an <u>inability</u> to communicate.  Moreover, as the ALJ noted, Dr. Allen opined that Plaintiff is able to understand, carry out, and remember instructions, and that Plaintiff "is able to handle expectable pressures in a work setting."  (R. 489).  When an individual is able to handle the pressures expected in a work setting, the fact that she may

9

have difficulty responding appropriately to supervision and coworkers when she is irritable, is not an insurmountable barrier to work or to communication.  Moreover, the ALJ accounted for this potential difficulty by limiting Plaintiff to infrequent interactions with supervisors and coworkers, and by limiting her to work with things, not people.  Dr. Allen's opinion requires no more.

The fact that Dr. Allen's opinion is in some sense qualitative (the possibility of <u>difficulty</u> responding appropriately) does not change the analysis.  The ALJ recognized this qualitative difficulty and determined that it could be accommodated by a temporal limitation to "infrequent interactions with supervisors and co-workers."  (R. 28).  Thus, although Plaintiff may have difficulty responding appropriately when irritable, the incidence of that difficulty will be reduced both by the fact that interaction occurs only infrequently, and by the fact that there will be no difficulty responding in those instances where interactions occur when Plaintiff is not irritable.  Plaintiff does not argue, and the evidence does not suggest that she is always irritable.  And, Dr. Allen opined only that it is <u>possible</u> Plaintiff will have difficulty responding appropriately when she is irritable.  Moreover, the ALJ also found that Plaintiff should work with things, not people.  This limitation will reduce both the stress on Plaintiff, and the potential for irritability during those infrequent interactions with supervisors and co-workers.  As the Commissioner argues, the ALJ's assessment is reasonable and is supported by the record evidence.

Plaintiff's argument (that Dr. Hill-Keyes's opinion that Plaintiff can handle only incidental interpersonal interaction) slants Dr. Hill-Keyes's opinion and ignores that the

ALJ specifically noted that she gave greater weight to Dr. Allen's opinion.  Dr. Hill-Keyes opined that Plaintiff is able "to sustain an ordinary routine without special supervision in tasks, where interpersonal contact is limited and incidental to work performed."  (R. 100, 112).  Thus, Dr. Hill-Keyes's opinion regarding interpersonal contact is quite similar to the ALJ's assessment that Plaintiff must work with things, not people, and that she can tolerate only infrequent interactions with supervisors and co-workers.  Moreover, to the extent that this portion of the opinion differs materially (if it does) from that of Dr. Allen, the ALJ gave greater weight to Dr. Allen's opinion, and as noted above, Plaintiff does not assert error in the weight accorded each of the medical opinions.

Plaintiff's argument that her understanding is supported by Dr. DeGrandis's opinion and by her previous employer's opinion is equally unavailing for the same reason.  The ALJ accorded "limited weight" to Dr. DeGrandis's opinion and explained how she accepted the portions of that opinion which are reflected in the RFC assessed, and she provided reasons to discount the other portions of that opinion.  (R. 31).  Plaintiff does not provide a basis for the court to find error in those findings.  As to the opinion of Plaintiff's former employer, the ALJ accorded "some weight" to that opinion, to the extent it was consistent with a finding that Plaintiff cannot perform her past work.  Id. at 32.  Plaintiff does not demonstrate error in that finding.

Plaintiff has shown no error in the evaluation of the psychologists' medical opinions.  She has not shown ambiguities in the opinions which were not properly

resolved and explained in the decision at issue here.  Therefore, she has not shown error requiring remand.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this19th  day of March 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**